UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DEANNA S.[1], | Case No.: 3:19-cv-01309-MK |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KASUBHAI, Magistrate Judge:**

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 12.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

For the reasons discussed below, the Court reverses and remands this case for the immediate calculation and award of benefits.

## BACKGROUND

Plaintiff protectively filed an application for Disability Insurance Benefits on June 10, 2016, with an alleged disability onset date of January 1, 2014. Tr. 15.  Plaintiff's claims were denied initially and upon reconsideration. Tr. 15.  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  ALJ John Michaelsen held a hearing on August 17, 2018. Tr. 38.  The ALJ denied Plaintiff's application in a written decision dated October 30, 2018. Tr. 15-29.  Plaintiff sought review from the Appeals Council.  The Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-3.  Plaintiff seeks judicial review of the Commissioner's decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  The initial burden of proof rests upon the claimant to meet the first four steps. *Id.*  If the claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(ii).  The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.*  At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.*  At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.*  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

## FINDINGS OF THE ALJ

In this case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 1, 2014. Tr. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: "chronic fatigue symptoms (CFS) and attention deficit hyperactivity disorder (ADHD)[.]" Tr. 18.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment in the Listings. Tr. 18-20.

Before step four, the ALJ determined that Plaintiff retained an RFC that allowed her to perform light work with these limitations: "she is limited to simple, repetitive, routine tasks with no public contact." Tr. 20.

At step four, the ALJ found that Plaintiff was incapable of performing past relevant work as an Education Program Manager. Tr. 27-28.  At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform based on her age, education, work experience, and RFC. Tr. 28-29.  The ALJ found that Plaintiff would be able to perform occupations such as Office Helper, Mail Room Clerk, and Pricer. Tr. 29. Finally, the ALJ concluded that from January 1, 2014 through the date of the decision, Plaintiff was not disabled within the meaning of the Act. Tr. 29.

## DISCUSSION

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons in rejecting (1) the medical opinion of treating physician Dr. Char Glen, and (2) Plaintiff's subjective complaints. Pl.'s Br. 4-16, ECF No. 18.

**I. Medical Opinion of Dr. Glen**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

Cir. 2008). Specific and legitimate reasons for rejecting a physician's opinion may include its

reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v.*

*Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

(9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). An ALJ errs by

rejecting or assigning minimal weight to a medical opinion "while doing nothing more than

ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's

conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*,

80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding [the doctors'] opinions and making

contrary findings, [the ALJ] effectively rejected them. [The ALJ's] failure to offer reasons for

doing so was legal error).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d

715, 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set

forth his own interpretations and explain why they, rather than the doctors', are correct."

*Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

"[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of an examining or treating physician."
*Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600
(opinions of non-treating or nonexamining physicians may serve as substantial evidence when
the opinions are consistent with independent clinical findings or other evidence in the record).

In a Physical Medical Source Statement, Dr. Glen listed the diagnosis of chronic fatigue
syndrome and ADHD. Tr. 608. Dr. Glen provided the following assessment of Plaintiff.
Plaintiff can walk zero to one city block without rest or severe pain. Tr. 608. Plaintiff can sit,
stand and walk for 5 minutes "at one time before needing to get up." Tr. 608. Plaintiff can sit,
stand and walk for less than two hours in an 8-hour working day with normal breaks. Tr. 608. In
an 8-hour working day, Plaintiff would need to walk around three times per day for
approximately 5 minutes each time. Tr. 609. Plaintiff would need to shift positions from sitting,
standing or walking if she worked, and she would need more than one unscheduled break each
hour. Tr. 609. Dr. Glen noted that Plaintiff "will need to lean against something if standing in
one place." Tr. 609. Plaintiff can frequently lift and carry less than 10 pounds, occasionally 10
to 20 pounds, and never 50 pounds. Tr. 609. While Plaintiff can occasionally look up and down
and turn her head right or left, she could rarely hold her head in a static position, twist, stoop,
crouch, squat, climb ladders or stairs. Tr. 609. As to Plaintiff's manipulative limitations, Dr.
Glen estimated that during an 8-hour working day Plaintiff can handle for 10% with her right
hand and for 15% with her left hand, finger with her right hand for 5%, finger with her left hand
for 10%, and reach bilaterally for 10%. Tr. 610.

The ALJ rejected Dr. Glen's opinion based on the following reasons:

Dr. Glen's characterization of the claimant's symptoms are not entirely supported
by her treatment notes, which contain no mention of swelling of soft tissue,
headaches, excessive perspiration, tachycardia, post exertional malaise and air
hunger. Additionally, Dr. Glen performed limited examinations of the claimant,

the results of which are mostly normal with the exception of some skin discoloration.

Tr. 27.

Dr. Glen treated Plaintiff between September 2015 and July 2018. Tr. 608. From September 2015 to July 2016, Plaintiff had monthly office visits with Dr. Glen. Tr. 608, 371-83. Dr. Glen's chart notes consistently documented Plaintiff's symptoms of fatigue and grogginess. Tr. 371-73, 375-76, 378, 381-82. While Dr. Glen was previously reluctant to make a diagnosis of CFS, she ultimately made the diagnosis. Tr. 375-76. Dr. Glen explained:

> Chronic fatigue syndrome: on review of the 2015 IOM diagnostic criteria, and all of the data in [Plaintiff's] chart, this diagnosis does fit based on all 3 symptoms (unable to pursue previous work due to fatigue not alleviated by appropriate or long hours of sleep, post exertional malaise, unrefreshing sleep) and two of the manifestations (cognitive impairment and orthostatic intolerance).

Tr. 376.

In offering her opinion, Dr. Glen identified the clinical findings and objective signs: "easily overheated, drenching sweats even at normal room temperature [and] while using a cooling cloth; tachycardia with very mild exertion." Tr. 608. Dr. Glen also noted that Plaintiff's ANA test on April 19, 2018 was positive, and Plaintiff had swollen lymph nodes from a CT scan on May 2, 2018. Tr. 608. While Dr. Glen's treatment notes may not specifically identify certain symptoms, she referenced Plaintiff's medical record from other sources which reflects these symptoms.

Earlier treatment notes in 2012 and 2013 show that Plaintiff struggled with ongoing brain fog and sleep issues. Tr. 593, 595, 597, 599, 600, 603. In July 2014, at a neuropsychological evaluation by neuropsychologist Lawrence Moore, Ph.D., Plaintiff "indicat[ed] that for the past 12 to 15 years she has had difficulty waking up every morning." Tr. 321. "She describe[d] primary grogginess in the morning but also complains of confusion, disorientation, clumsiness

and general difficulties processing information." Tr. 321.  In November 2015, Dr. Daniel Root, M.D., noted that Plaintiff "commonly has rapid heart rates" and "she complains of difficulty with deep breathing and that she feels like she never gets as much air if [sic] she should." Tr. 452.  Dr. Root again noted these symptoms in January and August of 2015. Tr. 455, 457.  Dr. Root further noted that Plaintiff "has a long-standing history of daytime fatigue, nonrestorative sleep, snoring, and attention deficit issues." Tr. 453.  Subsequently, Brooke Ervin, N.P., assessed upper airway resistance syndrome and tachycardia. Tr. 450.

Similarly, chart notes from naturopathic physician Courtney Day, N.D., show that in April 2016 Plaintiff reported symptoms of brain fog, air hunger, stiff joints, increased sweating without the smallest amount of exertion, and sleep apnea. Tr. 410-11.  The chart notes in May 2016 show that Plaintiff's symptoms had been "unchanged since initial visit." Tr. 414.  Plaintiff continued to report fatigue, air hunger, headache, muscle pain, and sweating in her subsequent bi-weekly and monthly office visits . Tr. 459-72.  For example, in October 2016, Plaintiff reported increased fatigue since the previous month's visit, her brain fog and attention worsened, and her headaches increased. Tr. 470.  Plaintiff's overall condition was "fluctuating between a little below and above average days" and she was "concerned over lack of improvement." Tr. 470.  Dr. Day diagnosed Plaintiff with Lyme disease after DNA testing. Tr. 412, 414-15, 417.

After Dr. Day's diagnosis and treatment, Plaintiff consulted Dr. Martin Ross for a second opinion. Tr. 517.  Dr. Ross documented in November 2016: "When wakes [sic] intense groginess [sic] that takes hours to pass. Her energy averages 2/10. … 2/10 muscle pain. Severe cognition[.] NO longer able to read. It has been 6 months to a year. [W]ord finding, [sic] poor word finding and memory[.] [H]ard to process inofrmation. [sic]" Tr. 517 (capitalized "NO" in original).  Notes of physical examination by Dr. Ross read: "very tired and very confused." Tr.

518.  Dr. Ross assessed cognitive impairment and chronic fatigue syndrome. Tr. 518.  In January

2017, Dr. Ross noted that Plaintiff's "fatigue is worse overall." Tr. 509.  Plaintiff "[t]ires if

lifting and bending." Tr. 509.

> The Ninth Circuit has reviewed cases involving chronic fatigue syndrome.
>
> Chronic fatigue is defined as "*self-reported* persistent or relapsing fatigue lasting
> six or more consecutive months." Centers for Disease Control, The Chronic
> Fatigue Syndrome: A Comprehensive Approach to its Definition and Study, 121
> *Annals of Internal Medicine* 954 (1994) (emphasis added). Although CFS is
> accompanied by symptoms such as body aches, low-grade fevers, memory
> problems, headaches, and extended flu-like symptoms, which Claimant
> manifested, the presence of persistent fatigue is necessarily self-reported. The
> final diagnosis is made "by exclusion," or ruling out other possible illnesses.

*Reddick*, 157 F.3d at 726.

In view of Plaintiff's longitudinal record, the Court finds that Dr. Glen's characterization

of Plaintiff's symptoms is supported by the record.

As to the ALJ's finding that Dr. Glen performed limited examinations of Plaintiff, this is

not a specific and legitimate reason to reject Dr. Glen's opinion.  Social Security Ruling ("SSR")

14-1p provides: "CFS, when accompanied by appropriate medical signs or laboratory findings,

… can be the basis for a finding of 'disability.'" SSR 14-1p (S.S.A. Apr. 3, 2014), *available at*

2014 WL 1371245.  Dr. Glen supported her opinion with a detailed explanation and references to

objective clinical findings in Plaintiff's medical record.  Thus, the ALJ's rejection of Dr. Glen's

opinion is not supported by the substantial evidence in the record.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a

treating or examining physician, [the Ninth Circuit] credits that opinion 'as a matter of law.'"

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  This Court therefore finds that the ALJ erred in

rejecting Dr. Glen's opinion and credits Dr. Glen's opinion as a matter of law.

## II. Subjective Complaints

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion that the claimant is not credible is insufficient. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Id.* The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 21. Yet the ALJ rejected Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of her symptoms because they are not entirely consistent with the record. Tr. 21. The ALJ found that Plaintiff "has engaged in a somewhat normal level of daily activity and interaction." Tr. 23. The ALJ reasoned that Plaintiff's activities of daily living were inconsistent with her alleged restrictions. Tr. 23. Specifically, the ALJ stated:

> The claimant admitted to activities of daily living including caring for a household pet, attending to her personal hygiene, preparing simple meals, completing light household chores and yardwork, driving, shopping, counting change, handling a checkbook and socializing with others (Exhibit 8E) [Tr. 240-55]. She has even reported house sitting to her mental health treatment provider (Exhibit 26F at 41) [Tr. 672]. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.

Tr. 23.

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). When considering the factor of daily activities, the Ninth Circuit has repeatedly warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to

rest periodically or take medication."). "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Exhibit 8E referenced by the ALJ is a Function Report completed by Plaintiff. Tr. 240-55. Plaintiff explained in the report that she feeds her dog, walks her dog three to four times a week, and plays, talks and engages with her dog. Tr. 241, 243. To Plaintiff, her dog has been her emotional support over the past several years as her symptoms worsened. Tr. 243. Plaintiff also noted that her mother helps take care of her dog in the morning when she is sleeping, because Plaintiff has "[e]xtreme difficulty waking" even with several alarms and she experiences intense grogginess until late afternoon. Tr. 241-42. Plaintiff's mother "lately has taken over the role of 'owner' [of Plaintiff's dog] for vet & grooming appointments." Tr. 241.

As the ALJ noted, Plaintiff can prepare simple meals. Tr. 243, 246. According to Plaintiff's report, while she is also able to cook a meal involving multiple steps or following a recipe, any distraction makes it difficult for her to remember what she needs to do next. Tr. 246. Plaintiff sometimes injures herself when preparing food in the morning. Tr. 246. Plaintiff "occasionally clean[s] bathrooms, vacuum[s] floors, wash[es] laundry and do[es] some household repairs, and also basic yard work." Tr. 247. She needs many breaks and it takes her a longer time than "a typical person" to do the chores. Tr. 247.

Plaintiff testified that she cannot handle any complicated information for the first part of the day because she gets confused easily. Tr. 52. She spends time with her dog in the backyard and birdwatches until she feels a little more mobile and clearer. Tr. 52. Plaintiff then can do a little yard work, or a "[v]ery minimal or a very basic chore[.]" Tr. 52. She has to do chores at a slow pace with many breaks. Tr. 52-53. Plaintiff testified: "if I have a doctor appointment, that's

basically all I can do is [sic] get my brain and my body ready to handle the stimuli of being out and having to think and talk and answer questions, and then I'll … be completely immensely fatigued afterwards." Tr. 53.

As for driving, Plaintiff testified that she rarely drives. Tr. 53. She only drives on days when she has "had a lot of quiet time … to get [her] brain organized." Tr. 53. Even so, Plaintiff "won't ever drive anywhere that's not close" or not a familiar route to her. Tr. 53. Plaintiff's medical record shows that she takes her stimulants early to feel alert enough to drive to a doctor's appointment. Tr. 449, 452. Otherwise, her mother drove her to the appointments. Tr. 449. As to the ALJ's note that Plaintiff "even reported house sitting[,]" Plaintiff also reported that she felt disorganized when she was house sitting. Tr. 672.

This Court finds that Plaintiff's testimony is consistent with both her longitudinal record and Dr. Glen's opinion. The ALJ in finding that Plaintiff has engaged in a somewhat normal level of daily activity, ignored that Plaintiff requires frequent breaks and longer time to do a simple chore because of the persistent fatigue. *See Reddick*, 157 F.3d at 724 (finding that the ALJ ignored the key symptom of CFS, "which is persistent fatigue.")

Furthermore, in concluding that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintain employment[,]" the ALJ failed to explain how these activities are transferable to a work environment, "where it might be impossible to periodically rest[.]"*Fair*, 885 F.2d at 603. With respect to Plaintiff's one-time house sitting, the ALJ also failed to probe and take into consideration of Plaintiff's report of feeling disorganized.

The ALJ further reasoned: "although the claimant has alleged that she has suffered from her impairments since childhood, she was able to obtain an advanced degree and perform skilled work for several years." Tr. 23.

Plaintiff explained in her Function Report that she received a master's degree, worked, travelled, helped others, and socialized when her "abilities were greater." Tr. 209, 243. Plaintiff's symptoms at that time were "manageable-ish." Tr. 48; *see also* Tr. 322, 326 (Plaintiff endorsed symptomatology dates back to childhood including chronic patterns of inattention, distractibility, difficulties with organization, restlessness and making careless mistakes), 409 (Plaintiff remembers that "it was always hard waking up" in childhood; Plaintiff has been experiencing fatigue since early childhood).  After working with children with Autism in the classroom for many years, in 2013 Plaintiff decided to leave that job to work in a different setting that allowed more flexible hours so she could better manage her symptoms. Tr. 44-45, 209.  While she hoped the change to be temporary, Plaintiff's "level of functioning has become progressively worse." Tr. 209.  Plaintiff wrote in her report: "Most days, my symptoms are debilitating. If I am lucky, I have one hour per day when my brain is functioning at a level that allows me to successfully take care of basic needs and responsibilities." Tr. 209.  Completing the Function Report form took Plaintiff 40 hours over many days. Tr. 251.  Plaintiff testified that she does not enjoy reading anymore because she cannot concentrate enough to focus or take in information, and she cannot remember what she just read. Tr. 54.  Plaintiff rarely watches movies or TV because she "can[no]t pay attention for long enough to watch a whole movie." Tr. 54.  Plaintiff's limited ability to focus makes it challenging for her to enjoy what she loved doing in the past. Tr. 55, 250.

Plaintiff's subjective complaints reflect that her symptoms were manageable in her early years but has gradually worsened since around 2013. "In children, [chronic fatigue syndrome] symptoms may progress more gradually than in adolescents or adults." SSR 14-1p, n. 12, *available at* 2014 WL 1371245. Additionally, "CFS [chronic fatigue syndrome] is a systemic disorder that may vary in frequency, duration, and severity." SSR 14-1p, *available at* 2014 WL 1371245. Because Plaintiff's subjective complaints align with the symptoms of chronic fatigue syndrome, her ability to obtain an advanced degree and work in earlier years is not a legally specific and convincing reason to reject her subjective complaints.

"[W]here the ALJ improperly rejects the claimant's testimony regarding his or her limitations, and the claimant would be disabled if his or her testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.' Rather, that testimony is … credited as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). At the hearing, the vocational expert testified that absenteeism of more than one day per month would preclude competitive employment. Tr. 61. The vocational expert also testified that "workers engaged in unskilled occupations who are unable to sustain a minimum of 85 percent of a productivity day are not going to sustain competitive employment." Tr. 61. Plaintiff testified that she would be lucky if she has one hour per day when her brain is functioning at a level that allows her to take care of basic needs and responsibilities. Tr. 209. Plaintiff's subjective complaints are credited, and she is disabled because her conditions preclude competitive employment based on the vocational expert's testimony.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits should be directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Glen's medical opinion and Plaintiff's subjective testimony. As to the second prong, the vocational expert's testimony makes it clear that Plaintiff's limitations preclude her from engaging in competitive employment. Thus, there are no outstanding issues that must be resolved before a determination of disability can be made. The second prong of the credit-as-true doctrine is satisfied. It is also clear from the record that

the ALJ would be required to find Plaintiff disabled, satisfying the third prong.  A remand for an immediate award of benefits is appropriate.

For the reasons set forth above, the Court remands this case for the immediate calculation and award of benefits.

DATED this 22nd day of July 2020.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge